# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

ADRIAN JENKINS,

    Plaintiff,

v.

LT. SHOEMAKER,

    Defendant.

CIVIL ACTION NO.: 6:15-cv-74

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia. He filed a cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement at GSP. After the requisite frivolity review, Plaintiff's Complaint was served on Defendant Shoemaker, a lieutenant at GSP. (Doc. 12.) Defendant then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint. (Doc. 16.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS** Plaintiff's Complaint, without prejudice. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## BACKGROUND

Plaintiff filed this cause of action on June 25, 2015, due to events occurring just seven days prior. (Doc. 1.) Plaintiff alleges that on June 18, 2015, while housed at GSP, he returned from his shower to his cell in handcuffs. (Id. at p. 9.) He noticed that legal materials which he had been working on regarding another lawsuit were missing. Id. He immediately asked to have

the legal materials returned to him, but prison officials ignored Plaintiff's requests. Id. Plaintiff refused to back up to the cell's open tray flap to have his handcuffs removed until his legal materials were returned. (Id. at pp. 10–11.) Defendant Shoemaker then "geared up" several of his officers with gas masks and entered Plaintiff's cell. (Id. at p. 12.) While Plaintiff was speaking to Shoemaker regarding the legal materials, Shoemaker sprayed pepper spray into Plaintiff's eyes and mouth. Id. Plaintiff was then taken from his cell to the Prison's medical unit. (Id. at p. 13.) In his Complaint, Plaintiff admitted that he did not exhaust the prison's administrative remedies before filing this action. (Id. at p. 18.) However, he also alleged that prison officials refused to receive his grievance. (Id. at p. 6.)

On December 30, 2015, I issued a Report and Recommendation after conducting the requisite frivolity review of Plaintiff's Complaint. (Doc. 12.) I recommended that the Court dismiss some of Plaintiff's claims but concluded that the Complaint stated plausible claims against Defendant Shoemaker for violation of Plaintiff's Eighth Amendment right to be free from excessive force. Id. On February 3, 2016, the Court adopted the Report and Recommendation in part. (Doc. 14.) Specifically, the Court dismissed Plaintiff's claims regarding the taking of his legal materials for failure to state a claim, dismissed all claims against Defendant Cory Osborne, and dismissed all claims regarding the taking of Plaintiff's gold teeth. Id. The Court also dismissed Plaintiff's claims for preliminary injunctive relief but sustained Plaintiff's Objection to the dismissal of his claims for injunctive relief against Defendant Shoemaker. Id.

After service of the Complaint, Defendant Shoemaker filed a Motion to Dismiss arguing that Plaintiff failed to exhaust his available administrative remedies before bringing this action. (Doc. 16.) Defendant supports his Motion with a Brief, several exhibits, and a Response Brief.

(Id.; Doc. 21.) Plaintiff filed a Response and a Surreply. (Docs. 20, 22.) In addition, Plaintiff cites to his earlier filed Motion to Amend. (Doc. 8.) In these pleadings, Plaintiff contends that he did not need to exhaust his administrative remedies because he asserted a claim for injunctive relief. He also argues that grievance forms were not readily available to him, that his counselor, Russell Houser, was not available in the dorm to accept his grievance, and that Mr. Houser refused to accept his grievance because the grievance was on a form that Plaintiff received from another prison.

## DISCUSSION

### I. Dismissal for Plaintiff's Failure to Exhaust his Available Administrative Remedies Before Filing Suit

#### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings

3

and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**B.     Legal Requirements for Exhaustion**

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United

4

States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding

that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### C. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 16-3.) This SOP does not require an inmate to

attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." Id. Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 4.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 2.) The inmate must use the prison's Grievance Form when filing the original grievance, and he must sign the Grievance Form and give it to any counselor. (Id. at pp. 7–8.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id. at p. 8.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 10–11.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

### D. Assessment of Plaintiff's Exhaustion

Plaintiff admits that he did not exhaust the Georgia Department of Corrections' grievance procedure before filing this action. However, construing his pleadings liberally, he argues that: 1) he did not need to pursue his administrative remedies because his Complaint includes claims for injunctive relief; and 2) GSP's grievance process was not available to him. The Court should reject each of these lines of argument.

#### 1. Whether Plaintiff's Injunctive Relief Claims Excuse Exhaustion

Plaintiff contends that his request for injunctive relief "justifies the Plaintiff's initial need to have filed this lawsuit in advance of exhausting administrative remedies." (Doc. 20, p. 3.) The PLRA does not include an exception to exhaustion for claims of injunctive relief. Further, the United States Supreme Court recently held that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016). Even before Ross, courts frequently dismissed injunctive relief claims due to a plaintiff's failure to exhaust. See McDaniel v. Crosby, 194 F. App'x 610, 613–14 (11th Cir. 2006) (affirming district court's dismissal of injunctive relief because inmate could not establish a substantial likelihood that he would succeed on his underlying claims after failing to exhaust administrative remedies). Requiring plaintiffs to exhaust despite claims of injunctive relief not only comports with the language of the PLRA, but is grounded in sound policy. If courts excused plaintiffs seeking injunctive relief from pursuing administrative remedies first, then virtually every plaintiff could avoid exhaustion, rendering the requirement meaningless.

Consequently, the fact that Plaintiff's Complaint includes a claim for injunctive relief does not excuse his failure to exhaust GSP's administrative remedies.

> 2. Whether GSP's Administrative Remedies Were Unavailable to Plaintiff at the Time he Filed Suit

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___ 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. ___, 2016 WL 3128839, at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, ___ U.S. ___, 2016 WL 3128839, at *8. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id., ___ U.S. ___, 2016 WL 3128839, at *7.

Plaintiff argues that the administrative remedies officially on the books at GSP were not made available to him. In support of this argument, Plaintiff first states that prison officials did not furnish him with a proper grievance form "for hours after the June 18, 2015 incident had

9

occurred." (Doc. 20, p. 4; see also Doc. 8, p. 5.) Thus, he alleges, he "had no choice than to utilize a 'grievance form' that [he had] obtained while being confined at Hancock State Prison only a couple of weeks earlier." (Doc. 20, p. 5.) He further contends that Counselor Houser did not appear in Plaintiff's housing unit until thirty days after the incident occurred, preventing Plaintiff from filing the grievance within the ten-day deadline. (Id. at p. 6.)[1] Plaintiff alleges that Counselor Houser then rejected the grievance because it was filed on the wrong grievance form. (Id. at p. 6; Doc. 8, p. 5.) According to Plaintiff, the only difference between the GSP grievance form and the Hancock State Prison grievance form which Plaintiff used is the color of the forms. (Doc. 8, p. 5.)

Even assuming all of Plaintiff's allegations as true under the first Turner step, he fails to establish that the administrative remedies at GSP were not capable of use. According to his own allegations, he only waited for "hours" after the incident to obtain a grievance form. A delay of mere hours to receive a grievance from is not the type of impediment that results in unavailability. Based on this brief delay, Plaintiff resorted to using a form from his former prison. Counselor Houser did not make the administrative remedies unavailable by requiring Plaintiff to instead submit his grievance on GSP's grievance form. The grievance procedure specifically provides that inmates must use the prison's grievance form. Id. Again, an inmate must comply with the institution's procedural rules in order to effectuate proper exhaustion. Jones, 549 U.S. at 218; Woodford, 541 U.S. at 90–92. It is not this Court's place to second guess a prison's grievance rules, and an inmate cannot create unavailability by failing to abide by those rules. Additionally, while Plaintiff complains that Counselor Houser was not in Plaintiff's housing unit until thirty days (or fourteen days) after the incident, he was not required to wait on

---

[1] Though Plaintiff states in his response brief that Counselor Houser did not appear in his housing unit until thirty days after the incident, in his Motion to Amend, Plaintiff stated that the met with Counselor Houser on July 2, 2015, fourteen days after the incident occurred. (Doc. 8, pp. 3–4.)

10

Counselor Houser to submit his grievance. Rather, the prison's policy explicitly provided that Plaintiff could "give it to any counselor." (Doc. 16-3, pp. 7–8.)

Furthermore, Plaintiff's statements regarding actions that occurred after he filed this lawsuit are of little value. "Satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and, thus, must have occurred before the suit was filed." McDaniel v. Crosby, 194 F. App'x 610, 613–14 ("To the extent [plaintiff] relies upon the grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies."). Thus, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012). At the time that Plaintiff filed his original Complaint, June 25, 2015, only seven days had passed from the incident forming the basis of his claims.[2] Thus, the ten-day period for the filing of his original grievance had not yet expired. It is disingenuous for Plaintiff to argue that GSP's administrative remedies were unavailable to him when he filed suit before pursuing the first step of those remedies throughout the available time period for doing so. Additionally, Plaintiff did not seek any relief through the grievance appeal process.

In sum, under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that GSP officers "thwart inmates from taking advantage of a grievance process through machination,

---

[2] Under the "prison mailbox rule," a prisoner's complaint is deemed to be filed on the date it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988); United States v. Glover, 686 F.3d 1203 (11th Cir. 2012). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." Glover, 686 F.3d at 1205. Plaintiff signed his Complaint on June 25, 2015. (Doc. 1, p. 8.)

misrepresentation, or intimidation."[3] Ross, ___ U.S. ___, 2016 WL 3128839, at *8. Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in Ross.

Plaintiff's claims of unavailability wither even more readily when subjected to the crucible of examination required by the second Turner step. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083. Having reviewed all of Plaintiff's and Defendant's filings, the Court finds Counselor Houser's account of Plaintiff's attempts at exhaustion more credible than Plaintiff's. Further, under Houser's account, GSP's administrative remedies were available to Plaintiff.

Counselor Houser states that, in June of 2015, he worked as the counselor in the K-Building at GSP and that Plaintiff was housed in that building. (Doc. 21-1, pp. 2–3.) According to Houser, Plaintiff could have obtained a grievance form from Houser, one of these other counselors, or his unit manager. Id. Houser avers that, as a counselor, he personally met with each inmate housed in the K-Building at least once a week. (Id. at p. 3.) Thus, he would have been available to Plaintiff on a weekly basis to receive any grievance that Plaintiff wished to file. Id. Additionally, Houser states that, while he would not have accepted a grievance from Plaintiff

---

[3] In response to the Motion to Dismiss, Plaintiff does not appear to argue that GSP officers deterred him from filing a grievance through intimidation. His Complaint states that he seeks an injunction "for the potential 'harm' and 'danger' which Plaintiff have [sic] been made subjected to being confined here at Georgia State Prison." (Doc. 1, p. 19.) He also states that he is "in great fear from my safety and life being here and of my legal materials being hindered." (Id. at p. 22.) Such conclusory allegations cannot provide grounds to excuse a prisoner from exhausting his administrative remedies. Boyd v. Corrections Corp. of America, 380 F.3d 989, 997–98 (6th Cir. 2004) (plaintiff's nonspecific allegations of fear did not excuse his failure to exhaust his administrative remedies); Brown v. Napoli, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) (plaintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance concerning these matters). Refusing to allow Plaintiff to skirt the exhaustion requirement through non-specific allegations of retaliation is grounded in sound policy. See Harrison v. Stallone, No. 9:06–CV–902, 2007 WL 2789473, at *6 (N.D.N.Y. Sept. 24, 2007) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims").

written on the form of another prison, he would have "immediately given [Plaintiff] another grievance (one that originated from GSP) and advised him to re-write the grievance on the form that [Houser] had just given him." (Id. at p. 4.) Houser further states that, though he was the counselor in the K-Building, "numerous other counselors came into the K-Building on a regular basis," and Plaintiff could have submitted his grievance to one of those counselors. Id. Houser avers that as a counselor, he always forwarded the grievance to the grievance coordinator on the same date that the inmate gave it to him. (Id. at p. 3.)

Houser's account of availability is consistent with the record evidence, including the prison's Standard Operating Procedures and the affidavit of GSP's grievance coordinator, Jacquelyn Ayeni. (Docs. 16-2, 16-3.) Ayeni avers that grievance forms are available in all living units and in the counselor's offices during business hours. (Doc. 16-2, p. 4.) In contrast to Houser's account, Plaintiff's account of the grievance availability at GSP contains inconsistencies. For example, though Plaintiff stated at one point that Houser did not meet with him until fourteen days after the incident, (doc. 8, pp. 3–4), he now claims that Houser did not appear until "nearly thirty days" or "nearly a month" after the incident, (doc. 20, pp. 4, 6). Houser's more credible account contradicts Plaintiff's claims that he could not pursue his grievance because he could not obtain a grievance form and that Houser was not available to accept his grievance.

Moreover, Plaintiff's grievance history belies any contention that prison officials thwarted his attempts to file grievances. (Doc. 16-4.) Since June of 2012, he has filed sixteen grievances, including nine which he filed while incarcerated at GSP. Id. Thus, it is clear that the prison's grievance system has been readily available to Plaintiff. See Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that

13

[plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")

In sum, Plaintiff filed this lawsuit only seven days after the incident giving rise to his claims, without even taking the first step in his prison's grievance process, and before the deadline for taking that step passed. An inmate must do more to resolve his dispute within the literal walls of the prison or at least the figurative walls of the prison system before seeking relief in the halls of the courthouse. Consequently, the Court should **GRANT** Defendant's Motion and **DISMISS** Plaintiff's Complaint.

## II.    Dismissal of Plaintiff's Putative Claims Against Counselor Houser

On July 22, 2015, Plaintiff moved to amend his Complaint to add a claim against Counselor Houser. (Doc. 8.) In that Motion, Plaintiff cited Counselor Houser's alleged impediments to Plaintiff's pursuit of his administrative remedies. Id. However, Plaintiff did not attach a proposed amended complaint to his Motion. On October 9, 2015, the Court granted Plaintiff's Motion to Amend. (Doc. 10.) In that Order, the Court gave Plaintiff a period of fourteen days to file his amended complaint. (Id. at p. 2.) The Court stated that "[a]mendments or supplements filed after this time will not be considered absent a showing of good cause for failure to file within the time set by the Court." Id. Plaintiff never filed an amended complaint. However, in his response to Defendant's Motion to Dismiss, Plaintiff complains that the Court failed to consider his claims against Counselor Houser when conducting the requisite frivolity review of this case. (Doc. 20, pp. 8–9.)

As an initial matter, Plaintiff's failure to submit an amended complaint within the fourteen-day period set by the Court thwarts his efforts to assert claims against Houser. Moreover, even if Plaintiff's Motion to Amend could be construed as an amended complaint, those claims would fail on the merits.[4]

Again, Plaintiff's putative claims against Houser center on Houser's alleged failure to comply with GSP's procedures when processing Plaintiff's grievance. Plaintiff contends that Houser failed to meet with Plaintiff in a timely manner and that Houser rejected Plaintiff's grievance. However, in order to state a claim for relief under Section 1983, it is not enough to allege a violation of a prison's internal rule or policy. Rather, Plaintiff must allege that Houser's act or omission deprived Plaintiff "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). The Eleventh Circuit has determined "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." Thomas v. Warner, 237 F. App'x 435, 437–38 (11th Cir. 2007) (agreeing with other circuits' decisions finding the same way and citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), and Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). In other words, Plaintiff's allegation that Houser failed to comply with GSP's grievance procedure does not state a plausible due process violation or other constitutional claim.

For all of these reasons, the Court should **DISMISS** Plaintiff's putative claims against Houser.

---

[4] In assessing the merits of Plaintiff's putative allegations against Houser, the Court employs the same standard of review which it employed when conducting the frivolity review of Plaintiff's Complaint. (Doc. 12, pp. 3–4.) Thus, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**III.    Leave to Appeal *In Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[5]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss and Plaintiff's putative claims against Houser, there are no non-frivolous issues to raise on appeal, and any appeal would

---

[5]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss, (doc. 16), **DISMISS** Plaintiff's Complaint, without prejudice, based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 22nd day of June, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA